UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
MATTHEW COULOUTE, Jr.,                            :
                                                  :
                        Plaintiff,                :
                                                  :      11 CV 5986 (HB)
          - against -                             :
                                                  :      OPINION & ORDER
AMANDA RYNCARZ and                                :
STACEY BLITSCH,                                   :
                                                  :
                        Defendants.               :
                                                  :
------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

  Before the Court is a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Matthew Couloute, Jr. ("Plaintiff") filed this Complaint seeking damages against Amanda Ryncarz and Stacey Blitsch (collectively "Defendants") for engaging in tortious interference with prospective business relations when they allegedly posted comments about Plaintiff on an Internet website. For the following reasons, the motion to dismiss is granted and leave to amend the Complaint is denied.

### I.   BACKGROUND

  The following is meant to provide context and has no bearing on the present motion: Plaintiff's relationship with Defendant Blitsch began in 2003 in California. They separated sometime after they moved to Atlanta and had a child together. Plaintiff moved to Florida with their son, and Defendant Blitsch followed. Plaintiff now resides in New Jersey. Plaintiff's relationship with Defendant Ryncarz began during Plaintiff's residency in Florida. After they separated, Plaintiff married a third woman not involved in this lawsuit. Both Defendants still reside in Florida.

  The following facts are taken from Plaintiff's original Complaint and are assumed to be true for the purposes of this motion to dismiss. Since 2011, Plaintiff has practiced law out of his office in Manhattan. Compl. ¶¶ 7–8. Plaintiff alleges that between December 25, 2010, and May

1

2011, Defendants posted malicious statements about him on the website www.liarscheatersrus.com. *Id.* ¶ 9. In particular, Plaintiff asserts that at least the following statements were made by Defendant Ryncarz on or shortly after December 25, 2010:

1. "[Mr. Couloute] lied and cheated all through his 40 years of life." *Id.* ¶ 10.
2. "[Mr. Couloute] [u]ses people/his son/women to get what he wants then dumps you when he's done with them. Has no long term friends. He rents or finances everything and owns absolutely nothing." *Id.*
3. A comment posted anonymously responding to earlier comments, including: "He is very very manipulating. he's an attorney so he's great at lying and covering it up without batting an eye."[1] *Id.*

And by Defendant Blitsch on or shortly after January 4, 2011:

1. "[W]hat these ladies have said about his character is very true. I met him and dated briefly and I was taken in with the charm and instant "connection" he claimed we had . . . [A]s soon as I started asking questions about other aspects of his life and figured out he wasn't comple[tely] honest he turned cold then disappeared. And of course another male is going to say Matt is a "solid dude" . . . if you agree with lieing [sic] and manipulating any female you come in contact with I guess he could be considered that. . . ." *Id.* ¶ 11.
2. A comment referring to Plaintiff's previous legal employer, United Football League: "I came across this site by accident by following a UFL news feed, so your friend Matt has more problems than these posts if in search for the league his name is associated with this site." *Id.* ¶ 12.

Plaintiff alleges that Defendants made these statements knowing that Plaintiff was working in New York as an attorney and made them with the aim of interfering with Plaintiff's ability to market his legal skills. In doing so, Defendants "unfairly and maliciously damaged one of Mr. Couloute's most valuable asset [sic] as an attorney, his reputation for honesty and integrity." *Id.* ¶ 13. Plaintiff's proposed Amended Complaint includes the allegation that these

---

[1] The comment in full reads: "This is the absolute truth about this man!! He will stop communication with you suddenly, then reach out years later as he did with me trying to sweet talk you and make you feel like you're the most special woman in the world that he's been looking for. He is very very manipulating. he's an attorney so he's great at lying and covering it up without batting an eye. Our relationship didn't last long as I figured him out pretty quickly but for others, BE FOREWARNED, HE'S SCUM! RUN FAR A WAY!" Compl. ¶ 10.

statements defamed him, causing present and prospective clients to view Plaintiff in a negative and false light. Am. Compl. ¶ 13. Plaintiff states that due to these postings, prospective clients are discouraged from contacting Plaintiff for legal services. *Id.* ¶ 14; *see also* Compl. ¶ 14.

Originally and on August 25, 2011, Plaintiff filed this Complaint alleging a single cause of action for tortious interference with prospective business relations. On September 14, 2011, Defendants filed the present motion to dismiss. On October 8, 2011, Plaintiff opposed the motion and requested leave to amend the Complaint to cure deficiencies elicited in Defendants' motion and to add a second cause of action for defamation. Defendants submitted the reply memorandum to their motion on October 18, 2011, where they argued that the Amended Complaint that Plaintiff sought to submit failed to adequately state a claim. On October 20, 2011, Plaintiff submitted a motion to amend and an accompanying memorandum arguing that the Court should accept the Amended Complaint without addressing the concerns Defendants raised regarding the new defamation claim.[2] The Defendants have not sought leave to respond to Plaintiff's most recent memorandum, nor has Plaintiff sought leave to respond to Defendants' arguments regarding the defamation claim. As such, the motion to dismiss and request for leave to amend the Complaint are considered fully briefed.

## II.   DISCUSSION

**A.   Adequacy of Pleadings and Leave to Amend**

The Plaintiff's case may be dismissed to the extent that he "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal on this ground, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Court's determination of whether a complaint states a "plausible claim for relief" is a "context-specific task" that requires application of "judicial experience and common sense." *Id.* at 1950. Unless the Plaintiff's well-pleaded allegations have "nudged [his] claims across the line

---

[2] Plaintiff submitted his October 20 memorandum twice, once categorizing it as a Motion to Amend/Correct the Complaint and a second time as a Reply Memorandum in support of that same motion. These memoranda are excerpts from Plaintiff's October 8th opposition memorandum, where the request for leave to amend was originally made.

from conceivable to plausible, [Plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Additionally, the court must draw all reasonable inferences in the non-movant's favor, *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007), but it "need not accord [l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal citation and quotation marks omitted).

Leave to amend a pleading should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility," the Court will grant leave to amend. *Monahan v. New York City Dept. of Corr.*, 214 F.3d 275 (2d Cir. 2000). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss . . . ." *Lucente v. Inter'l Bus. Machs. Corp.*, 310 F.3d 243 (2d Cir. 2002).

**B.     Tortious Interference with Prospective Business Relations**

Under New York law,[3] to establish a claim for tortious interference with prospective business relations, a plaintiff must establish: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the business relationship." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114 (2d Cir. 2010).

   *i.     Original Complaint*

Plaintiff concedes that his original Complaint fails to specify a "relationship with a client that was interfered [with] by Defendants' wrongful conduct as alleged in the complaint."[4] Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n") 1. This shortcoming alone warrants dismissal of the Complaint. *See, e.g.*, *DiFolco*, 622 F.3d at 115 ("[T]he complaint fails entirely to describe any third party with whom [Plaintiff] had prospective business relations to be interfered with . . . .").

---

[3] The parties proceed under the assumption that New York law governs the conduct alleged in this case. The possible conflicts of law have not been raised and thus are not presently before the Court. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (internal quotation marks omitted)).

[4] Defendants point to three shortcomings in the Complaint: Plaintiff failed to (1) specify a specific business relationship that was harmed; (2) allege that any of Defendants' actions were specifically directed at the third parties; and (3) allege that Defendants acted with the sole purpose of harming Plaintiff or used wrongful means. Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Supp.") 6–9.

Because of this admitted defect, I turn to Plaintiff's proposed Amended Complaint which seeks to satisfy the pleading requirements.

      *ii.   Proposed Amended Complaint*

Plaintiff alleges interference by Defendants with four attorney-client relationships and indicates that these instances are exemplary of Defendants' goal which Plaintiff posits as sufficient to show interference with Plaintiff's legal practice generally. Am. Compl. ¶¶ 15–22. With respect to the four listed clients:

    a. Client 1, after having read Defendants' comments on or around March 2011, refused to continue his business relationship with Plaintiff;

    b. Client 2, after becoming aware of the comments on September 14, 2011, refused to continue his business relationship with Plaintiff;

    c. Clients 3 and 4, after reading the comments in middle to late 2011, refused to engage in business with Plaintiff;

*Id.* at ¶ 16. Plaintiff states that, based on Defendants' knowledge of Plaintiff's profession and the language used by Defendants (calling him a "liar" and a "cheater"), it was Defendants' intention to reach all of Plaintiff's current and prospective clients. *Id.* ¶¶ 17–18; *see also* Pl.'s Opp'n 3–4 (arguing that Defendants "must have known that Plaintiff had current clients"). Not only was the interference the Defendants' sole motive, the means by which Defendants interfered was improper because the comments were false and defamatory. Am. Compl. ¶ 19.

Defendants maintain that the proposed Amended Complaint is still deficient. First, Plaintiff fails to allege that Defendants knew or could have known of a specific business relationship, to say nothing of a failure to make the required showing that it was that client relationship with which she sought to interfere. Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") 3 ("Plaintiff alleges *essentially the opposite*—that defendants were generally directing comments at everyone who might be a client."). Second, Plaintiff fails to demonstrate either that Defendants' sole purpose was to harm his business relations or that Defendants used wrongful means to interfere with those relations. *Id.* at 4–5. With respect to the question of Defendants' purpose in posting the comments, Defendants point to the context in which they were made; a website meant to "allow individuals who have been lied to and cheated on in their personal relationships to express themselves about their experience and to 'find support'. . . ." *Id.* at 5.

For Plaintiff's tortious interference claim to survive, Plaintiff must allege that Defendants "directly interfered with the [identified] business relationship by directing some activities towards the third party and convinc[ing] the third party not to enter into a business relationship with the plaintiff." *Zdenek Marek v. Old Navy (Apparel), Inc.*, 348 F. Supp. 2d 275, 280 (S.D.N.Y. 2004) (internal quotation marks omitted); *see also G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995). Plaintiff fails to point to any client, current or prospective, about which Defendants had knowledge and to whom their comments were directed. *See Old Navy*, 348 F. Supp. 2d at 280 ("It is due to this utter failure to allege any knowledge on the part of defendants of any business relationships with which they allegedly interfered that plaintiff's claim must fail."). Plaintiff would have the Court infer from the Defendants' comments (accusing Plaintiff of being a "liar" and a "cheater") and the fact that Defendants "must have known that Plaintiff had current clients" that Defendants specifically targeted those clients. Am. Compl. ¶¶ 17–18; Pl.'s Opp'n 3–4. Plaintiff provides no cases to support the idea that potentially harmful statements posted on a website such as this one, coupled with the knowledge that the statements might be read by third parties, is sufficient to show that one or more relationships were intentionally interfered with by Defendants. In their search for a lawyer, the clients, as asserted by Plaintiff, were influenced by the comments in their decision not to retain Plaintiff's services.[5] Even though Plaintiff's reputation has suffered, I am unwilling to take the leap from generalized comments calling Plaintiff a "liar" and a "cheater"—on a website called "liarscheatersrus" no less—to actions directed at specific business relationships. *See Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 349 (S.D.N.Y. 2009) ("[T]he wrongful conduct that is relevant [is] that which was directed not at the plaintiff, but at the third

---

[5] Defendants do not even raise the issue of whether Plaintiff satisfied the "but for" causation requirement in the claim. *See Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 78 (S.D.N.Y. 1995) ("[A] plaintiff must allege that, but for defendant's conduct, his prospective business relations would have coalesced into an actual contract."). I am doubtful, though, that Plaintiff has even satisfied this requirement. While Plaintiff says that clients refused to enter into agreements or continue established business relationships with him after reading the comments, *see* Am. Compl. ¶ 16, "mere contentions that third parties canceled contracts . . . because of the alleged defamatory remarks made by [Defendants], offered with no factual basis to support the allegations, [are] insufficient to state a cause of action for tortious interference with contractual relations." *M.J. & K. Co. v. Matthew Bender and Co.*, 631 N.Y.S.2d 938, 940 (N.Y. App. Div. 1995); *see also Fine v. Dudley D. Doernberg & Co.*, 610 N.Y.S.2d 566, 567 (N.Y. App. Div. 1994) ("The requirements for establishing liability for interference with prospective contractual relations are more demanding than those for interference with [the] performance of an existing contract." (internal quotation marks omitted)).

party with whom the plaintiff has or seeks to have a relationship."); *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 429 (S.D.N.Y. 2008) (posting statements on a website directed at the "public and customers at large [was] far too general to constitute a specific third party for purposes of a tortious interference claim" (internal quotation marks omitted));  *see also DiFolco*, 622 F.3d at 115 (describing "harm to . . . career development, economic harm in the form of lost income and benefits, harm to her professional and personal reputation, and harm consisting of mental anguish and emotional distress" as "too conclusory, vague, and lacking in a factual basis to make out [plaintiff's] tortious interference claim"). To do otherwise would be to elevate conceivable, "defendant-unlawfully-harmed-me" accusations to the level of plausibility. *Iqbal*, 129 S. Ct. at 1949.

Plaintiff's claim for tortious interference with prospective business relations is dismissed, and Plaintiff's request for leave to amend the Complaint as to this claim is denied as futile.

**C.     Defamation**

A plaintiff asserting a claim for defamation is required to plead: "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege." *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001) (footnotes omitted) (citing *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999)). "In evaluating whether a cause of action for defamation is successfully pleaded, the words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." *Dillon*, 704 N.Y.S.2d at 5 (internal brackets omitted). "Courts will not strain to find defamation where none exists. Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable." *Id*. (internal quotation marks and citations omitted). And it is well-established that "[t]ruth provides a complete defense to defamation claims." *Dillon*, 704 N.Y.S.2d at 6 (citing, *inter alia*, *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1306 (N.Y. 1977)).

*i.     Plaintiff's Proposed Amended Complaint*

Plaintiff seeks leave to amend the Complaint to add an additional claim for defamation. Plaintiff states that Defendants' comments were "untrue and defamatory in that they falsely

7

reported Plaintiff's professional character, actions and statements, and were made with an intent to harm Plaintiff professionally." Am. Compl. ¶ 25. The comments constitute slander *per se* "because they impugn Plaintiff's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely charging [him] with conduct that would tend to injure [his] trade or business." *Id.* at ¶ 29.

### ii. Defendants' Statements are Hyperbolic Opinions

The key question here is whether, drawing all reasonable inferences in favor of Plaintiff, the comments contain assertions of fact or opinion. The New York Court of Appeals distilled the following three factors which courts are instructed to consider in determining whether a statement is one of fact or opinion:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Brian v. Richardson*, 660 N.E.2d 1126, 1129 (N.Y. 1995) (internal quotation marks and citations omitted), *cited in Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997). The third factor "lends both depth and difficulty to the analysis" and is critical to determining whether the alleged defamatory statements consist of "assertions of facts [or] nonactionable expressions of opinion." *Id*. It is important for a court to "consider the content of the communications as a whole, as well as its tone and apparent purpose." *Id*. at 1129–30 (citation omitted). "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Id*. at 1130 (internal quotation marks omitted). Beyond the "immediate context in which the disputed words appear," the New York Court of Appeals requires courts "to take into consideration the larger context in which the statements were published, including the nature of the particular forum." *Id*.

Defendants argue that the comments are hyperbolic statements of opinion. *See* Defs.' Reply 8–10. With the possible exception of the statement that Plaintiff "rents or finances everything and owns absolutely nothing"—a statement clearly capable of being proven true or

8

false—the comments, even if viewed in isolation, are opinion. Defendants state that Plaintiff "lied and cheated all through his 40 years of life", and that, because Plaintiff is an attorney, "he's great at lying and covering it up without batting an eye." Comments such as these are clearly hyperbolic. And when viewed within the larger context of the website on which they were posted, there can be no doubt that a reasonable reader would understand the comments to be opinion. As Defendants note, liarscheatersrus.com is "specifically intended to provide a forum for people to air their grievances about dishonest romantic partners." *Id.* at 9. The average reader would know that the comments are "emotionally charged rhetoric" and the "opinions of disappointed lovers." *Id.* Of course the Internet makes it more likely that a greater number of people will read comments such as these, and thereby amplify the impact they may have on a person, but this does not change the underlying nature of the comments themselves. *See Sandals Resorts Intern., Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 415–16 (N.Y. App. Div. 2011) (noting the Internet "encourage[es] a freewheeling, anything-goes writing style", and that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts" (internal quotation marks omitted)). Because I find that Defendants' comments are opinion, the Plaintiff's request for leave to amend the Complaint to add an additional claim for defamation is denied as futile. *See* Robert D. Sack, *Sack on Defamation* § 4:3.1 (4th ed. 2011) ("If a statement appears in a place usually devoted to, or in a manner usually thought of as representing personal viewpoints, it is also likely to be understood—and deemed by a court—to be nonactionable opinion.").

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED, and the Plaintiff's request for leave to amend the Complaint is DENIED. The Clerk of the Court is directed to close the relevant motions and remove the matter from my docket.

SO ORDERED.

February 15, 2012
New York, New York

_____
**HAROLD BAER, JR.**
**United States District Judge**